UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KENONA INDUSTRIES, LLC,                    Case No.  1:23-cv-01227

　　　　　Plaintiff/Counter-Defendant,          Hon. Jane M. Beckering

v

PERLANE SALES, Inc;

　　　　　Defendant/Counter-Plaintiff.

---

### FIRST AMENDED COMPLAINT

Plaintiff Kenona Industries, LLC ("Kenona") for its First Amended Complaint states:

### Parties, Jurisdiction, and Venue

1.　　　Kenona is a Delaware limited liability company with its principal place of business located at 3044 Wilson Dr. NW, Grand Rapids, MI 49534 in Kent County, Michigan.

2.　　　Kenona's ultimate parent corporation is Arrow Machine and Fabrication Group Inc., a Canadian Corporation with its principal place of business in Canada.

3.　　　Defendant Perlane Sales, Inc. ("Perlane") is an Ohio corporation with its principal place of business located at 4665 Allen Rd., Unit C, Stow, OH 44224.

4.　　　This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1332(a)(2) because this is a case between a citizen of a State and a citizen of a foreign state, and because the amount in controversy exceeds $75,000.

5.　　　This Court has personal jurisdiction over the Defendant because Defendant transacted business in this state, and because Defendant consented to the jurisdiction of this Court under Section 21.10 of the Terms and Conditions of Purchase (the "Terms"). **Exhibit 1.**

6.    Venue is appropriate in this court because the parties transacted business here and Perlane agreed under Section 21.10 of the Terms that: "The exclusive venue of any dispute relating to this Agreement shall be in the state or federal courts within Kent County, Michigan, and the parties hereby irrevocably consent to the jurisdiction of such courts."

<u>**Factual Allegations**</u>

7.    Kenona is a high-volume precision machining company providing components to the automotive industry's leading suppliers and OEMs.

8.    In this particular instance, Kenona machines side rails that are ultimately included in Rivian's vehicles.

9.    Kenona machines the side rails pursuant to Rivian's designs and specifications, which are subject to change at Rivian's discretion.

10.    Rivian's design for the side rails called the use of certain nuts, specifically "RIVNUT-M8x1.25x5.5 RND KNRL BLND SE R108 (the "Part").

11.    As Rivian initially designed the Side Rail, it required 9 of the Parts per rail, or 18 of the Parts per vehicle.

12.    On April 6, 2022, Defendant provided Kenona with a price quotation for the Part at $0.693 per Part.

13.    The quotation does not contain any terms and conditions.

14.    The quote does not reference a specific quantity, other than stating "100,000+."

15.    To source the Parts needed to fulfill Rivian's requirements, on April 15, 2022 Kenona issued blanket purchase order number 81072 to the Defendant (the "Purchase Order").

16.    Perlane accepted this purchase order.

17.    The Purchase Order incorporates by reference Kenona's standard terms and conditions by stating on the first page of the document that "All terms of your agreements with

Kenona are governed by Kenona's Terms of Purchase and Supplier Requirements Manual, which can be found at our website located at www.kenona.com."

18.     The terms and conditions provide that Kenona will issue releases for the Parts.

19.     The dates stated within the first four weeks in any release provided by Kenona "shall be considered as a definite order." **Exhibit 1 ¶2.1(b).**

20.     The Terms provide a further window of time authorizing the supplier to purchase raw materials.

21.     Specifically, the Terms state that "The quantities and required delivery dates set within an additional period of 4 weeks (calendar weeks 5-8 subsequent to the issuance date of the Release) shall constitute an authorized approval with regard to raw material procurements."

22.     The Terms provide that any forecasted orders beyond the eight-week period, "the Release *shall constitute a non-binding supply forecast only*."

23.     The Terms also contain a merger clause, which states: "The Contract constitutes the entire agreement between Seller and Buyer with respect to its subject matter, and supersedes all prior oral and written representations and agreements by the parties with respect to the subject matter of the Contract." **Exhibit 1 ¶21.6.**

24.     The Terms also prohibit modifications of the agreement, unless the modification is "in writing and signed by both parties." **Id.**

25.     Finally, the Terms provide that in the event of the default by the Buyer, "Seller's damages will be limited to the Contract price for completed Products and Services and the actual cost of work-in-process and raw materials authorized by Releases (which will become Buyer's property upon payment in full)." **Exhibit 1 ¶12.2(b).**

26.    For several months, Kenona issued releases for the Parts, and Defendant supplied the Parts without issue.

27.    However, in October of 2022, Rivian changed the design for the Side Rail, reducing the number of the Part needed per rail from 9 Parts per rail/18 Parts per vehicle to 2 Parts per rail/4 Parts per vehicle.

28.    On October 21, 2022, Kenona communicated this change in design to the Defendant, and appropriately adjusted its releases to reflect the design change.

29.    Kenona purchased, and continue to purchase, the quantity of Parts specified in its firm releases.

30.    In other words, while Kenona still issues releases for the Parts, the quantity specified in the releases has changed from the original, non-binding forecast due to "changes required by Buyer's customer" as permitted under Section 1.2(a) of the Terms. See Exhibit 1, §1.2(a).

31.    Upon information and belief, at some point near the beginning of the relationship, Defendant purchased nearly 1.5 million of the Part from its supplier, likely in an effort to obtain a bulk discount.

32.    The excessive quantity of Parts purchased by the Defendant far exceeded the firm orders and raw material authorizations provided by Kenona.

33.    The 4/19/22 forecast is instructive of this point:

| No. | Item | Description | Quantity | U/M | Due Data | Price | Surcharge | Net Amount | |
|-----|------|-------------|----------|-----|----------|-------|-----------|------------|---|
| 1 | 4033 | SC00011740  SH-20-080 | | | | | 0.00000 | | |
| | | RIVNUT-M8x1,25x5,5 RND KNRL BLND SE R108 | | | | | | | |
| 2 | | | 15,000.000 | EA | 5/5/2022 | | 0.69300 | 10,395.00 | USD |
| 3 | | | 15,000.000 | EA | 5/12/2022 | | 0.69300 | 10,395.00 | USD |
| 4 | | | 24,000.000 | EA | 5/19/2022 | | 0.69300 | 16,632.00 | USD |
| 5 | | | 24,000.000 | EA | 6/2/2022 | | 0.69300 | 16,632.00 | USD |
| 6 | | | 24,000.000 | EA | 6/16/2022 | | 0.69300 | 16,632.00 | USD |
| 7 | | | 24,000.000 | EA | 6/30/2022 | | 0.69300 | 16,632.00 | USD |
| 8 | | | 24,000.000 | EA | 7/14/2022 | | 0.69300 | 16,632.00 | USD |

a.      As stated in the Terms, releases within four weeks of the schedule issue date (April 19-May17) constitute firm orders. Thus, this forecast constituted a firm order for 30,000 Parts.

b.      As stated in the Terms, releases between weeks 4-8 (May 17-June 14) constitute material authorizations, i.e. authorization for the supplier to obtain the materials necessary to produce the Part. Thus, this forecast authorized the Defendant to purchase materials necessary to supply 48,000 Parts.

c.      As stated in the Terms, any forecast beyond the eight week period constitutes a non-binding forecast. Kenona has no obligation to purchase Parts listed in this period.

34.     Accordingly, the April 19 forecast authorized the Defendant to complete 30,000 Parts which Kenona would have to purchase, and authorized the Defendant to obtain raw materials sufficient to create 48,000 Parts.

35.     Since Kenona notified Defendant of the design change, Kenona has purchased from the Defendant the quantity of Parts contained in its firm orders and material authorization releases.

5

36.    Despite these low firm orders and material authorizations, Defendant purchased at nearly 1.5 million Parts from its supplier.

37.    After Rivian reduced the Parts needed in the supply chain, Defendant is now demanding that Kenona immediately accept and pay for the nearly 1.5 million Parts that Perlane purchased from its supplier without a firm order or authorized approval from Kenona to do so.

38.    Kenona's releases are controlling, and Kenona is only obligated to pay for finished goods in the quantities stated in its firm releases.  Kenona has no obligation to purchase the quantities stated in non-binding supply forecasts.

39.    Additionally, any reliance by Perlane upon a non-binding supply forecast is not reasonable.  Therefore, Kenona is under no obligation to accept and/or pay for Parts that Perlane purchased outside of Kenona's firm orders and/or material authorizations.

40.    Defendant has repeatedly threatened legal action against Kenona regarding this dispute, and has made repeated demands that Kenona purchase the 1,450,000 Parts that Defendant pre-purchased without authorization.

41.    As a result, there is an actual and immediate controversy requiring declaratory relief.

## COUNT I – DECLARATORY JUDGMENT

42.    Kenona restates the foregoing allegations as if fully set forth herein.

43.    As explained above, Kenona is under no contractual obligation to purchase the Parts in excess of Kenona's firm releases and material authorizations.

44.    Kenona has satisfied its contractual obligations by purchasing the firm orders and material authorizations specified within the eight-week window of each release.

45.    Kenona has satisfied all of its contractual obligations.

46.     The Defendant disagrees with Kenona's interpretation of the contract, and has threatened legal action with demands that Kenona purchase the 1,450,000 Parts that Defendant pre-purchased without authorization.

47.     The facts and circumstances of this case present an actual controversy regarding the contractual and legal rights and obligations of the parties under 28 U.S.C. § 2201.

48.     The rights of the parties can only be determined by a declaratory judgment.

WHEREFORE, Kenona respectfully requests that the Court issue a judgment declaring that Kenona has satisfied all of its contractual obligations and that it is not obligated under the parties' contract to purchase the 1,450,000 Parts that Defendant pre-purchased without authorization.

Respectfully submitted,

MILLER JOHNSON
Attorneys for Plaintiff

Dated: December 19, 2023          By: /s/ *Jacob L. Carlton*
                                                        Christopher J. Schneider (P74457)
                                                        Alexandra S. Page (P84662)
                                                        Jacob L. Carlton (P84859)
                                                  Business Address:
                                                        45 Ottawa Avenue SW, Suite 1100
                                                        Grand Rapids, MI 49503
                                                  Telephone: (616) 831-1700
                                                  schneiderc@millerjohnson.com
                                                  pagea@millerjohnson.com
                                                  carltonj@millerjohnson.com

7