UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENONA INDUSTRIES, LLC,

    Plaintiff/Counter-Defendant,

v.

PERLANE SALES, INC.,

    Defendant/Counterclaimant.
_____/

Case No. 1:23-cv-1227

HON. JANE M. BECKERING

**OPINION AND ORDER**

This is an automotive supply chain case concerning the purchase of rivet nuts. Now pending before the Court are the cross-motions for summary judgment by Plaintiff/Counter-Defendant Kenona Industries, LLC ("Kenona") (ECF No. 59) and Defendant/Counterclaimant Perlane Sales, Inc. ("Perlane") (ECF No. 61). For the following reasons, the Court grants Kenona's motion, denies Perlane's motion, and issues a Judgment to close this case.

**I. BACKGROUND**

**A. Factual Background**

Kenona describes itself as a "high-volume precision machining company providing components to the automotive industry's leading suppliers and [Original Equipment Manufacturers (OEMs)]" (First Amended Complaint ["FAC," ECF No. 7] & Answer [ECF No. 9] ¶¶ 1 & 7). The components relevant to this case are side rails that are ultimately included in "Rivian" electric vehicles (Mark Heinrich Decl. [Kenona Ex. A, ECF No. 60-1] ¶ 5). Kenona machines the side rails pursuant to Rivian's designs and specifications, which are subject to change at Rivian's discretion (FAC & Answer ¶ 9). Rivian's design for the side rails called for the use of

a certain rivet nut, specifically "RIVNUT-M8x1.25x5.5 RND KNRL BLND SE R108" (the "Part") (FAC & Answer ¶ 10; 2/21/25 Tom Girgash Decl. [Perlane Ex. A, ECF No. 62-1] ¶ 5). As Rivian initially designed the side rail, it required nine of the Parts per rail, or eighteen of the Parts per vehicle (Heinrich Decl. ¶ 6).

On April 6, 2022, Perlane provided Kenona with a price quotation of $0.693 per Part (FAC & Answer ¶ 12; 2/21/25 Girgash Decl. ¶ 5; Dennis Edwards Decl. [Perlane Ex. C, ECF No. 62-3] ¶ 4). On April 15, 2022, to source the Parts needed to fulfill Rivian's requirements, Kenona issued purchase order number 81072 to Perlane (Heinrich Decl. ¶ 7). The April 15, 2022 Purchase Order was for 277,500 Parts at $0.693 per Part, with a "Net 30" payment term (4/15/22 Purchase Order [Kenona Ex. C, ECF No. 60-3]). The April 15, 2022 Purchase Order stated that "[a]ll terms of your agreements with Kenona are governed by Kenona's Terms of Purchase and Supplier Requirements Manual, which can be found at our website located at www.kenona.com" (4/15/22 Purchase Order [Kenona Ex. C, ECF No. 60-3]).

As of April 15, 2022, Kenona's 2015 Terms and Conditions ("the 2015 Terms") were on Kenona's website (Heinrich Decl. ¶ 8). Regarding "quantity," the 2015 Terms provided in Section 1.1 that "Buyer will indicate quantity due periodically via a release schedule" (2015 Terms [Kenona Ex. B], ECF No. 60-2 at PageID.505). To that end, Section 2.1(a) of the 2015 Terms provided that quantities and delivery schedules will be specified in "Releases" that will be "reasonably determined by Buyer and sent to Seller from time to time" (*id.* at PageID.506). The 2015 Terms contemplated that "if no quantity is stated on the face of the Purchase Order, or if the quantity is blank or states the quantity as zero, 'blanket,' 'see release,' 'as scheduled,' 'as directed,' 'subject to Buyer's production releases,' or similar terms, then Seller will supply Buyer's requirements for Products in such quantities identified by Buyer as firm orders in various forms of

2

material authorizations, releases, manifests, broadcasts, etc., transmitted to Seller during the term of the Purchase Order" (*id.*).

Kenona issued three more purchase orders—dated April 19, 20, and 21, 2022—while the 2015 Terms were in place. Each purchase order issued by Kenona referenced the 2015 Terms. *See* 4/19/22 Purchase Order (Kenona Ex. F), ECF No. 60-6 at PageID.546 ("All terms of your agreements with Kenona are governed by Kenona's Terms of Purchase and Supplier Requirements Manual, which can be found at our website located at www.kenona.com"); 4/20/22 & 4/21/22 Purchase Orders (Kenona Ex. G), ECF No. 60-7 at PageID.550 (same) & PageID.553 (same)). Perlane accepted these orders and shipped the Parts. *See* Shipping Invoices (Kenona Ex. E, ECF No. 60-5).

On April 21, 2022, Kenona updated its Terms and Conditions and placed the updated Terms and Conditions on its website (Heinrich Decl. ¶¶ 8–9). The 2015 Terms and Conditions and the April 21, 2022 Terms and Conditions defined "the Contract" in materially identical ways, to wit: as "the Purchase Order, which includes and is governed by these General Terms and Conditions ('Terms'), and any other documents specifically incorporated by reference in the Purchase Order or separately agreed to in writing by both Buyer and Seller, such as specifications, drawings, customer requirements, or quality requirements" (2015 Terms § 1.1; 4/21/2022 Terms [Kenona Ex. H, ECF No. 60-8] § 1.1).[1] Like the 2015 Terms and Conditions, the April 21, 2022 Terms and Conditions also continued to provide that "[e]xcept for the changes described in Section 1, neither party may make any changes to the Contract during its term (as described in Section

---

[1] The only difference the Court notes between the two versions in defining "the Contract" is a non-material change in the Buyer's legal entity name (from "Kenona Industries, Inc., a Michigan corporation" in 2015 to "Kenona Industries, LLC, a Delaware limited liability company" in 2022), which does not impact the definition of "the Contract."

11.1) without the prior written agreement of Buyer and Seller's authorized representatives" (2015 Terms § 1.3; 4/21/2022 Terms § 1.3).  In both versions, Section 11.1, in turn, provides that "[s]ubject to Buyer's termination rights, the Contract formed by the Purchase Order is binding on the parties for the length stated in the Purchase Order or Contract" (2015 Terms § 11.1; 4/21/2022 Terms § 11.1).

Both the 2015 and April 21, 2022 Terms contained the following merger clause:

**21.6** *Entire Agreement.*

(a) The Contract constitutes the entire agreement between Seller and Buyer with respect to its subject matter, and supersedes all prior oral and written representations and agreements by the parties with respect to the subject matter of the Contract.  Except as authorized in Section 1, no subsequent terms, conditions, understandings, or agreements purporting to modify the terms of the Contract will be binding unless in writing and signed by both parties.

(b) New purchase orders and purchase order revisions/amendments, once accepted by Seller as provided in Section 1.1, will be governed by the Terms (as may be revised from time to time) that are posted on Buyer's website at: www.kenona.com ("Buyer's Website"), as of the date of acceptance.

(c) Buyer's Website may also contain specific additional requirements for certain items covered by the Purchase Order, including labeling, packaging, shipping, delivery and quality specifications, procedures, directions and/or instructions. Any such requirements shall be deemed to form part of the Contract. Buyer may periodically update such requirements by posting revisions thereto on Buyer's Website. In the event of any inconsistency between the Contract and Buyer's Website, the terms of the Contract shall prevail, unless the requirements specified on Buyer's Website expressly provide otherwise.

(2015 Terms § 21.6(a); 4/21/22 Terms § 21.6(a)).

Last, regarding quantity, the April 21, 2022 Terms continued to provide in Section 1.1 that "Buyer will indicate quantity due periodically via a release schedule" (4/21/22 Terms § 1.1). However, the 2015 and April 21, 2022 Terms differed in pertinent part as to their release mechanisms and supply forecasts.  Whereas the 2015 Terms included no explicit multi-tier release

4

system and no distinction between firm and forecasted supply periods, the April 21, 2022 Terms stated in Section 2.1(b) that—

> [w]ith regard to delivery dates and related quantities set within the first 4 weeks from the date of issue, the Release shall be considered as a definite order. The quantities and required delivery dates set within an additional period of 4 weeks (calendar weeks 5–8 subsequent to the issuance date of the Release) shall constitute an authorized approval with regard to raw material procurements. For any period beyond the time periods set forth above, the Release shall constitute a non-binding supply forecast only.

(4/21/22 Terms § 2.1(b)). Section 2.1(b) of the April 21, 2022 Terms further provided that "Buyer is not bound to reimburse the Seller for material purchases in excess of the authorized quantity marked as 'Material To' in the applicable Release for any reason" (*id.*).

Kenona subsequently issued more purchase orders to Perlane from April 29, 2022 through January 2025, containing the same reference to its Terms. *See*, *e.g.*, 4/29/22 Purchase Order (Kenona Ex. I), ECF No. 60-9 at PageID.567 (indicating that "[a]ll terms of your agreements with Kenona are governed by Kenona's Terms of Purchase and Supplier Requirements Manual, which can be found at our website located at www.kenona.com"); *see also* Kenona Exs. J–L (ECF Nos. 60-10 through 60-20). Perlane accepted these orders and continued shipping Parts. *See* Shipping Invoices (Kenona Ex. E, ECF No. 60-5). According to Perlane, "[a]t no point in time has Kenona provided notice to Perlane that it had revised, altered, or amended its Terms and Conditions or posted such revised, altered, or amended Terms and Conditions to its website" (2/21/25 Girgash Decl. ¶ 37; *see also* Edwards Decl. ¶ 15 (attesting that "Perlane certainly did not knowingly agree to the 2022 Terms and Conditions")).

In October 2022, Rivian changed the design for the side rail, reducing the number of the Parts needed per rail from nine Parts per rail and eighteen Parts per vehicle to two Parts per rail and four Parts per vehicle (Heinrich Decl. ¶ 11). On October 21, 2022, Kenona communicated

this change in design to Perlane and adjusted its releases to reflect the design change (Heinrich Decl. ¶ 12; 2/21/25 Girgash Decl. ¶ 20). Nonetheless, Perlane took steps to requisition additional Parts (2/21/25 Girgash Decl. ¶ 24). According to Perlane, to ensure that Kenona was provided the quantity of Parts specified in its release schedules, Perlane was required to requisition Parts six to eight months in advance of the release date specified on Kenona's purchase order (Edwards Decl. ¶ 7; 4/7/25 Girgash Decl. [Perlane Ex. A, ECF No. 68-1] ¶¶ 21–24). In early January 2023, Kenona again advised Perlane of an engineering change that would impact the supply chain (Girgash Decl. ¶¶ 25–27, 29). Perlane "continued its efforts to requisition the Part" (*id.* ¶ 32).

According to Perlane, Kenona has since "refused to purchase and accept delivery of a significant quantity of the Parts specified in its Purchase Order" (*id.* ¶ 36). Perlane represents that it has an undelivered balance of 1,145,885 Parts in its possession for which Kenona has refused to issue payment and take delivery (Edwards Decl. ¶ 10). Perlane concedes that Kenona has purchased 775,365 Parts (*id.* ¶ 9).

Kenona claims that it has purchased all quantities of the Part for which it placed a firm order or material authorization (Heinrich Decl. ¶ 14). Indeed, Kenona indicates that the Rivian program remains ongoing and that Kenona continues to order its requirements from Perlane in accordance with the Terms and Conditions incorporated in each purchase order (*id.* ¶¶ 15–16).

### B. Procedural Posture

Kenona initiated this action in state court, and Perlane removed it to this Court on November 21, 2023 based on this Court's diversity jurisdiction (ECF No. 1). On December 19, 2023, Kenona filed a First Amended Complaint, requesting a declaratory judgment as its sole claim for relief (ECF No. 7). Specifically, Kenona requests that this Court declare that "Kenona has satisfied all of its contractual obligations and that it is not obligated under the parties' contract to

purchase the 1,450,000 Parts that Defendant pre-purchased without authorization" (*id.* at PageID.102). To its Amended Complaint, Kenona attached the version of the Terms and Conditions that contained a "Revision Control Date" of "April 2022" (ECF No. 7-1).

On January 2, 2024, Perlane filed a Counterclaim and an Answer to the First Amended Complaint (ECF No. 9). In its Counterclaim, Perlane alleges Breach of Contract (Count One) and seeks Specific Performance (Count Two), i.e., for Kenona to "pay for and accept delivery of all the Parts specified in the Parties' agreement" (*id.* at PageID.141, 142).

Kenona subsequently filed a Motion for Partial Judgment on the Pleadings (ECF No. 22), seeking a declaratory judgment as to seven issues. This Court granted the motion in an Opinion and Order issued on August 21, 2024, holding that (1) Kenona issued the Purchase Order; (2) Perlane accepted the Purchase Order; (3) the Purchase Order incorporated Kenona's Terms by reference; (4) the Terms established that Kenona issues releases with forecasts for Parts; (5) the Terms provided that Kenona is obligated to only purchase the definite orders listed in the releases, which are the Parts listed in the first four weeks of the release, and the actual material cost of the Parts listed in the subsequent four weeks of the release; (6) Kenona's obligations are the result of express and unambiguous contract language, which cannot be supplanted by course of dealing, course of performance, usage of trade, or alleged oral or written statements as a result of the parol evidence rule, the integration clause, and the non-modification clause; and (7) the April 15, 2022 email is not a contract (Op. & Order, ECF No. 45). In pertinent part, this Court declared that "Kenona is entitled to partial judgment that its obligations are limited to the eight weeks of forecasted parts, as described herein, and partial dismissal of the Counterclaim to the extent the claims therein seek relief beyond this eight-week period" (*id.* at PageID.330). This Court's

7

decision relied on application of the April 21, 2022 Terms, which were "the Terms" the parties then understood to apply to all of the relevant purchase orders.

The parties thereafter conducted discovery, which had a deadline of December 27, 2024. *See* ECF Nos. 43–44. On December 18, 2024, counsel for Perlane emailed counsel for Kenona, seeking clarification about the precise effective date of the "April 2022" Terms and Conditions and asking about the prior version of Kenona's terms (Emails [Perlane Ex. D], ECF No. 62-4 at PageID.699–700). Counsel for Perlane stated the following:

> The month of April 2022 is important to the case, and we need to make sure that the "Terms and Conditions" that Kenona has relied upon actually were "in effect" when Kenona alleges that they were. Obviously the dispute arose well after April 2022, so we believe this to be a very reasonable request that is encompassed within prior discovery requests. You may consider it either a deficiency in Kenona's prior responses or a need for supplementation, however you need to justify it to Kenona. At minimum, Kenona should be able to easily provide the version in effect prior to "April 2022" and the date(s) on which the April 2022 version was uploaded to its website.

(*id.* at PageID.700). On January 8, 2025, Kenona informed Perlane that the Terms and Conditions previously described only as "the Terms" and attached to its First Amended Complaint were posted on Kenona's website on April 21, 2022 (*id.* at PageID.696; *see also* Brian Boyd Decl. [Perlane Ex. E, ECF No. 62-5] ¶¶ 3–5).

These cross-motions followed. Kenona filed a motion for summary judgment (ECF No. 59), seeking summary judgment of its declaratory judgment claim and Perlane's counterclaim. Perlane filed a response in opposition to Kenona's motion (ECF No. 65), and Kenona filed a reply (ECF No. 67). Additionally, Perlane filed a motion for summary judgment in its favor (ECF No. 61). Kenona filed a response in opposition (ECF No. 64), and Perlane filed a reply (ECF No. 68). Having considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d).

## II. ANALYSIS

### A. Motion Standards

"Under the *Erie* doctrine, federal courts sitting in diversity apply the substantive law of the forum state and federal procedural law." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). Under Federal Rule of Civil Procedure 56, a party may move for summary judgment, identifying each claim on which summary judgment is sought. FED. R. CIV. P. 56(a). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

In resolving a motion for summary judgment, a court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013); *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citation omitted). The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The function of the court is not "'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (quoting *Anderson*, 477 U.S. at 249). "There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Burgess*, 735 F.3d at 471 (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The ultimate inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law.'" *Sierra Brokerage Servs.*, 712 F.3d at 327 (quoting *Anderson,* 477 U.S. at 251–52).

When evaluating cross-motions for summary judgment, the court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506–07 (6th Cir. 2003); *see also Harris v. City of Saginaw, Mich.*, 62 F.4th 1028, 1032–33 (6th Cir. 2023) (describing the "hat switch courts perform when evaluating cross-motions for summary judgment"); *Parks v. LaFace Records,* 329 F.3d 437, 444 (6th Cir. 2003) ("[t]he fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate").

Perlane indicates that to the extent a grant of summary judgment would be in conflict with this Court's prior grant of partial Judgment on the Pleadings, Federal Rule of Civil Procedure 54(b) offers an avenue of relief inasmuch as Rule 54(b) provides that a nonfinal order is subject to reconsideration at any time before entry of a final judgment (ECF No. 62 at PageID.667; ECF No. 65 at PageID.840–842). Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all of the parties does not end the action as to any of the claims or parties and may be revised at any time prior to entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The Sixth Circuit has held that "courts will find justification for reconsidering interlocutory orders whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018) (citation omitted) (alteration in original). The decision to grant or deny reconsideration is within the district court's discretion. *See Tennessee*

*Conf. of Nat'l Ass'n for the Advancement of Colored People v. Lee*, 139 F.4th 557, 569 (6th Cir. 2025) ("[D]istrict courts generally have discretion to reevaluate [interlocutory] decisions at any time before a final judgment.").

## B. Discussion

The parties' overlapping arguments present essentially two issues for review: whether this Court should reconsider its earlier dispositive decision and which party is entitled to judgment as a matter of law on their competing contract claims. This Court is bound to apply Michigan law in accordance with the currently controlling decisions of its highest court. *See Metz v. Unizan Bank*, 649 F.3d 492, 496 (6th Cir. 2011). Under Michigan law, "[t]he primary goal in the construction or interpretation of any contract is to honor the intent of the parties," *Rasheed v. Chrysler Corp.*, 517 N.W.2d 19, 29 n.28 (Mich. 1994), and "[t]he prime source of that intent is the plain language of the agreement," *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 108 F. Supp. 3d 543, 553 (E.D. Mich. 2015) (citing *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 787 (Mich. 2003) ("Well-settled principles of contract interpretation require one to first look to a contract's plain language.") (citation omitted)). "'Where the language of the writing is not ambiguous the constriction [sic] is a question of law for the court on a consideration of the entire instrument.'" *In re Landwehr's Estate*, 282 N.W. 873, 874 (Mich. 1938) (citation omitted). *See also St. Clair Med., P.C. v. Borgiel*, 715 N.W.2d 914, 918 (Mich. Ct. App. 2006) (similarly indicating that the construction and interpretation of a contract are questions of law); *Meagher v. Wayne State Univ.*, 565 N.W.2d 401, 415 (Mich. Ct. App. 1997) ("[U]nder ordinary contract principles, if contractual language is clear, construction of the contract is a question of law for the court.").

1. **No Reconsideration**

The Court turns first to Perlane's request that this Court reconsider and "vacate" its earlier Opinion and Order based on the information found after discovery closed, namely, that the first three purchase orders in this case were governed by an earlier version of Kenona's Terms and Conditions. Perlane argues that the confusion about a material fact "demonstrates a clear lack of the meeting of the minds by the Parties" such that this Court should find that "no terms and conditions applied to the contractual relationship between the Parties" (ECF No. 62 at PageID.657–658, 668–669; ECF No. 65 at PageID.830–831, 842–844). Alternatively, Perlane argues that to the extent any terms apply, this Court should apply the 2015 Terms and Conditions, which Perlane asserts obligate Kenona to purchase *all* parts released under the Purchase Order (ECF No. 62 at PageID.670–672; ECF No. 65 at PageID.831–832, 854–859). According to Perlane, the April 21, 2022 Terms and Conditions on which the Court relied do not apply because (1) the parties did not agree to amend or revise the 2015 Terms and Conditions in a signed writing during the term of the Contract, and (2) Kenona continued to perform under the contract without informing Kenona of the changes to the Terms and Conditions (ECF No. 62 at PageID.674–677; ECF No. 65 at PageID.845–854).

According to Kenona, the 2015 Terms and Conditions are simply not relevant to the parties' dispute, which is about alleged unpurchased Parts (ECF No. 60 at PageID.495, 497–498). Kenona points out that the early April 2022 purchase orders to which the 2015 Terms applied have been "completely satisfied" because Kenona purchased all of the Parts set forth in those Purchase Orders (*id.*). Kenona points out that it "has always maintained that the 2022 Terms govern this dispute [and] has never changed this position" (ECF No. 67 at PageID.870).

There is no merit in Perlane's argument that because the parties were purportedly confused about a material fact, this Court should find that "no" terms and conditions applied to their contractual relationship. The inquiries during discovery do not equate to confusion in defining the parties' contractual relationship.

There is also simply no merit in Perlane's argument that this Court should apply the 2015 Terms to all of the purchase orders. Rather, as this Court previously determined, each purchase order, using language that is sufficient under Michigan law to incorporate the Terms into the parties' contract by reference, incorporated the terms and conditions that were then on Kenona's website. *See* Op. & Order, ECF No. 45 at PageID.325–326 (citing cases therein). And, "[u]pon acceptance, the Purchase Order, which include[d] … these General Terms and Conditions … and any other documents specifically incorporated by reference in the Purchase Order or separately agreed to in writing by Buyer and Seller … bec[a]me a binding contract between Buyer and Seller (collectively, the 'Contract')" (2015 Terms § 1.1; 4/21/2022 Terms § 1.1).

Last, there is no merit in Perlane's argument that the April 21, 2022 Terms and Conditions do not apply. During the entirety of their contractual relationship, the parties provided that "neither party may make any changes *to the Contract* during its term" (2015 Terms § 1.1; 4/21/2022 Terms § 1.1) (emphasis added). *See also* § 21.6(a) (indicating that each "Contract" could not be modified unless in writing and signed by both parties). As Kenona aptly points out (ECF No. 67 at PageID.869), each Contract was "completed," not "changed." Section 21.6 expressly indicated that "*new* purchase orders and purchase order revisions/amendments, once accepted by Seller as provided in Section 1.1, will be governed by the Terms (as may be revised from time to time) that are posted on Buyer's website at: www.kenona.com ("Buyer's Website"), as of the date of

13

acceptance" (2015 Terms § 21.6(b); 4/21/2022 Terms § 21.6(b)) (emphasis added).  In sum, Perlane's arguments do not support reconsideration of this Court's earlier decision.

**2.       Judgment as a Matter of Law in Kenona's Favor**

Turning to the competing requests for judgment as a matter of law, Kenona requests a declaratory judgment that it has "satisfied all of its contractual obligations and that it is not obligated under the parties' contract to purchase the 1,450,000 Parts that Defendant pre-purchased without authorization" (ECF No. 7 at PageID.102).  And Perlane seeks judgment in its favor on its claim for breach of contract and the remedy of specific performance for Kenona to "pay for and accept delivery of all the Parts specified in the Parties' agreement" (ECF No. 9 at PageID.141, 142).

The elements of a breach of contract claim are (i) the existence of a contract between the parties, (ii) the terms of the contract, (iii) breach of the contract, and (iv) damages.  *RBS Citizens Bank, N.A. v. Purther*, 22 F. Supp. 3d 747, 751 (E.D. Mich. 2014) (citing *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999) (applying Michigan law)).  Again, where the language of the writing is not ambiguous, its construction is a question of law for the court on consideration of the entire instrument.

Here, as this Court more fully described in its prior Opinion, the then-governing terms determine the rights and obligations of the parties at bar.  The 2015 and April 21, 2022 Terms differed in pertinent part as to their release mechanisms and supply forecasts.  Whereas the 2015 Terms included no explicit multi-tier release system and no distinction between firm, authorized, and forecasted supply periods, the April 21, 2022 Terms provided that release quantities for the first 4 weeks were binding definite orders, weeks 5–8 authorize raw material procurement (not

delivery), and beyond 8 weeks are nonbinding forecasts, with the Buyer not liable for the Seller's purchases above authorized amounts.

***Purchase Orders Under 2015 Terms.*** Under application of the 2015 Terms, Kenona issued three purchase orders (Kenona Exs. F & G, ECF Nos. 60-6 & 60-7).  Kenona asserts that it purchased from Perlane all of the Parts in these first three purchase orders (ECF No. 60 at PageID.495; ECF No. 64 at PageID.741; ECF No. 67 at PageID.867), an assertion that Perlane does not dispute.  *See also* Shipping Invoices, Kenona Ex. E, ECF No. 60-5.  Accordingly, there is no dispute in this record that Kenona satisfied its contractual obligations as to these purchase orders.

***Purchase Orders Under April 21, 2022 Terms.***  According to Kenona, the issue remaining for decision is simply a "math problem," to wit:  "how many [P]arts did Kenona forecast during the applicable eight-week periods, and how many [P]arts did Kenona order and purchase?" (ECF No. 60 at PageID.484).  According to Kenona, it has satisfied its contractual obligations to Perlane in this regard.  Citing its charts and the documents referenced therein, Kenona asserts that it purchased "every single Part for which it issued a firm order or raw material authorization," i.e., "every Part listed in the first eight weeks of each purchase order has been purchased by Kenona" (ECF No. 60 at PageID.486–497).  Kenona points out that "Perlane was free to reject the new purchase orders, but instead it chose to accept the new purchase orders with their incorporated terms and conditions," a decision that "binds them today" (ECF No. 67 at PageID.869).[2]

---

[2] Kenona analogizes to the decision in *Johnson Controls, Inc. v. Atl. Auto. Components, LLC*, No. 321172, 2015 WL 5945382, at *1 (Mich. Ct. App. Oct. 13, 2015) (ECF No. 60 at PageID.496; ECF No. 64 at PageID.742–743), a decision that Perlane contends is both factually and legally distinguishable (ECF No. 65 at PageID.851–852; ECF No. 68 at PageID.886–887).  The Court has not addressed the applicability of the *Johnson* decision inasmuch as unpublished opinions are not precedentially binding in Michigan.  *See* MICH. CT. R. 7.215(C).

15

In response, Perlane does not dispute Kenona's calculations. Perlane's briefing is limited to its arguments that either "no" terms or the more favorable 2015 Terms apply. *See* ECF No. 62 at PageID.668–677; ECF No. 65 at PageID.842–859. However, as stated, under the April 21, 2022 Terms incorporated within and governing these Contracts, Kenona was obligated to pay for only finished goods in the quantities stated in its firm releases, i.e., Kenona had no obligation to purchase the quantities stated in the non-binding supply forecasts. Accordingly, there is no dispute in this record that Kenona also satisfied its contractual obligations as to these purchase orders. Conversely, Perlane is not entitled to judgment as a matter of law in its favor on its claim for breach of contract and concomitantly not entitled to its requested remedy of specific performance.

### III.  CONCLUSION

Therefore:

**IT IS HEREBY ORDERED** that Kenona's Motion for Summary Judgment (ECF No. 59) is GRANTED.

**IT IS FURTHER ORDERED** that Perlane's Motion for Summary Judgment (ECF No. 61), including its request therein for reconsideration of this Court's August 21, 2024 Opinion and Order, is DENIED.

Dated:  August 12, 2025                                          /s/ Jane M. Beckering
                                                                                      JANE M. BECKERING
                                                                                      United States District Judge